IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BUFORD LEE BURKS,                    )
                                     )
            Plaintiff,               )
                                     )
v.                                   )          Case No. 2:18-cv-01891-TMP
                                     )
DR. ANTHONY GARDNER,                 )
*et al.*,                            )
                                     )
            Defendants.              )

## <u>**MEMORANDUM OPINION**</u>

This matter is before the court on the motions to dismiss Plaintiff Buford Burks's ("Plaintiff" or "Burks") "Expanded Complaint," filed by defendants Anthony Gardner ("Gardner"), Tommie Campbell, Anne P. Luke, Daisybelle Thomas-Quinney, Julene Delaine, Toby Fitch, and Johnny Patrick (collectively "Defendants") on February 19, 2019. (Docs. 16, 18). Plaintiff was given an opportunity to respond, but to date, no response has been filed.

Defendants are all employees or board members of the Sumter County Board of Education.[1] They jointly argue that all claims against them arising from the termination of Plaintiff's employment are due to be dismissed. The parties have

---

[1] Although the plaintiff has identified Dr. Gardner as the superintendent of the Sumter County Board of Education and the other individual defendants as chairman and members of the Sumter County Board of Education, it does not appear that he has named the Sumter County Board of Education, as corporate entity, as a defendant.

consented to the exercise of dispositive jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C. § 636. (Doc. 21). The court has considered all of the arguments and enters the following memorandum opinion.

**Procedural History and Facts**

Buford Burks filed his initial complaint on November 15, 2018. (Doc. 1). He alleged several violations of law stemming from his termination by the Sumter County Board of Education on October, 16, 2018. Defendants filed a motion for more definite statement on January 10, 2019, alleging that Plaintiff's complaint did not contain a short, plain statement of the facts giving rise to his claims. (Doc. 8). The court convened a hearing on January 25, 2019. (Docs. 10, 13). At that hearing the court explained the pleading requirements to the *pro se* plaintiff in great detail and ordered him to file an amended complaint.

Plaintiff filed an amended complaint (titled "Expanded Complaint") on February 4, 2019. Burks alleged that his termination by the Board violated his rights under the Americans with Disabilities Act, the Family Medical Leave Act, and the Employee Retirement Income Security Act because he was seeking treatment at the Tuscaloosa VA Hospital for a mental disability at the time of his termination. He further alleged that he had sick days that he was entitled to use for his absence from work. Burks also alleged that the Board entered into a contract with him to provide full pay and benefits for 75 days after voting to terminate him

but failed to do so, constituting a breach of contract. Finally, Burks alleged that he was denied substantive and procedural due process rights secured by the Fourteenth Amendment of the Constitution. The defendants filed the pending motions to dismiss on February 19, 2019. Gardner filed a motion to dismiss by himself and also joined in a motion to dismiss filed with all of the other defendants.

**Standard of Review**

On a motion to dismiss, the court must accept as true all of the facts alleged in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-51, 173 L. Ed. 2d 868 (2009). Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Liberal notice pleading standards embodied in Rule 8(a) "do not require that a plaintiff specifically plead every element of a cause of action," Roe v. Aware Woman Ctr. For Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001), or set out in precise detail the specific facts upon which she bases her claim. The complaint must only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Id. (quoting In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)). The Supreme Court raised the threshold for a sufficient pleading in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1965

(2007) (rejecting the standard from <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that any "conceivable" set of facts supporting relief is sufficient to withstand a motion to dismiss).  The threshold of plausibility is met where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). To withstand scrutiny under Rule 12(b)(6) a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and that will thus "nudge [his] claims across the line from conceivable to plausible."  <u>Twombly</u>, 550 U.S. at 570. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555.  The Eleventh Circuit Court of Appeals has explained that the principles set forth in <u>Twombly</u> and <u>Iqbal</u> require the complaint to set forth sufficient facts to "raise a right to relief above the speculative level."  <u>Speaker v. U.S. Dep't of Health and Human Servs. Centers for Disease Control and Prevention</u>, 623 F.3d 1371, 1380 (11th Cir. 2010).

Because the plaintiff is *pro se*, the court also is required to liberally construe his pleading.  <u>See Alba v. Montford</u>, 517 F.3d 1249, 1252 (11th Cir. 2008).  This creates an obvious tension with the <u>Twombly/Iqbal</u> pleading standard, a tension the district courts have struggled with.  While *pro se* pleaders are given a liberal

reading, they still must comply with the rules of procedure. <u>Albra v. Advan, Inc.</u>, 490 F.3d 826, 829 (11th Cir. 2007). This means that, at the least, the *pro se* pleading must allege facts that "raise a right to relief above the speculative level." <u>Smith v. Murphy</u>, No. 2:16-CV-01251-MHH-TMP, 2016 WL 7974660, at *1 (N.D. Ala. Nov. 1, 2016), report and recommendation adopted, No. 2:16-CV-01251-MHH-TMP, 2017 WL 345571 (N.D. Ala. Jan. 24, 2017) (quoting <u>Saunders v. Duke</u>, 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted)).

**<u>Discussion</u>**

Plaintiff asserts five claims in his amended complaint: a violation of the Americans with Disabilities Act, a violation of the Family and Medical Leave Act, a violation of the Employee Retirement Income and Security Act, a state law breach of contract, and a violation of his procedural and substantive due process rights secured by the Fourteenth Amendment. For reasons that will be discussed under the appropriate subheading, the defendants contend that all of the plaintiff's claims against them are due to be dismissed.

A. <u>Facts Alleged in the Amended Complaint</u>

The court has assumed to be true the following facts alleged in the amended complaint and the exhibits annexed to it.

On July 10, 2018, the Sumter County Board of Education ("SCBE") voted and approved hiring the plaintiff as a Language Arts teacher for the 2018-2019

school year at the Livingston Middle School. This was the first time the plaintiff had been employed by the SCBE. By August 27, 2018, dealing with rowdy eighth grade students caused the plaintiff stress, and he sought treatment at the Veterans Administration Hospital in Tuscaloosa, Alabama. On that day, he wrote the following letter to Dr. Anthony Gardner, the superintendent of the Sumter County schools:

> I am a disabled veteran, and the challenging students at Livingston Junior High have made me mentally and physically exhausted. I have come close to grabbing them to force them into line and into their seats. As a result, Saturday Aug. 25, 2018, I called the VA Mental Crisis line, and I am seeking a medical approval to retire effective Nov. 16, 2018. I will visit VA Hospital in Tuscaloosa Monday, August 27, 2018, to have my vital signs checked and VA Crisis Center will contact me next week. I have 59 sick days to use until Nov. 16, 2018. I can leave daily lessons, or Kelly Services can allow substitute teacher to follow the curriculum. Please have all other correspondence after Sept. 20, 2018 including my first check before direct deposit starts sent to my home address at 322 8th Terrace West Birmingham, Alabama 35204.

In the body of the amended complaint, the plaintiff alleges that, in fact, he had 61 sick days available for use. Although he was not present at the school, he sent lessons to the principal to cover the days from August 27 to November 13, 2018.

On September 14, 2018, the plaintiff was notified by letter from Dr. Gardner that he would recommend the plaintiff's termination at a meeting of the SCBE scheduled for October 16, 2018. The letter informed the plaintiff that he had the

right to submit a written statement as to why he should not be terminated. On September 21, 2018, the plaintiff responded to Dr. Gardner's letter with the following:

> In reference to your letter dated Sept. 14, 2018, I ask that you and the board accept my resignation effective Nov. 16, 2018 when my 61 sick leave days are exhausted. I am a Disabled Veteran, and I was treated for mental stress Spring 1981 at Charleston Air Force Base South Carolina. The recalcitrant students refusing to follow rules of not talking as I taught, walk single-file and orderly in line, and pressure from Principal Maye to get them in order had me under such stress I nearly placed some in seats and in line. As a result, I felt it best to seek treatment from Veteran's Administration Hospital, use sick days, and submit my resignation. I have sent Principal Maye a lesson for each day through Nov. 16, 2018. Due to the mitigating circumstances please[2]

Apparently on that same day, the plaintiff wrote a second letter to Dr. Gardner, as follows:

> This is a follow up to the statement dated today for members of the school board and you requesting you recommend acceptance of my resignation as English teacher at Livingston Junior High effective Nov. 16, 2018 due to mental stress rather than recommending termination. I am a Disabled veteran with a "Service-connected" disability, and I am still in treatment at veteran's [sic] Administration Hospital with an appointment next on Oct. 26, 2018.

At the meeting of the SCBE on October 16, the Board voted to accept Dr. Gardner's recommendation of termination of the plaintiff's employment. The

---

[2] The exhibit submitted with the amended complaint was only this partial letter.

following day, October 17, 2018, Dr. Gardner sent the following letter to the plaintiff:

> This letter is to notify you that the board voted to approve my recommendation to terminate you at its meeting on October 16, 2018. This decision is effective immediately. You will continue to receive full pay and benefits for 75 calendar days from the date of the board's vote.

By letter dated October 26, 2018, the plaintiff notified Dr. Gardner that his VA physicians "will be sending me a letter addressed to you recommending I am fit to return to in-service teaching." He requested that that information be submitted to the SCBE "as part of my request for appeal of the Oct. 16, 2018, decision…." Consistent with the letter, the plaintiff submitted to Dr. Gardner a letter from Dr. Fortunate Ovbiagele at the VA, stating that the plaintiff was "fit and stable to resume work."

B. Americans with Disabilities Act

Plaintiff alleges that his termination violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq.* Defendant Gardner, individually, argues that the Plaintiff's ADA claim against him is due to be dismissed because there is no individual liability under the ADA, which relief is limited to suing the employer. The Board-member defendants and Gardner also argue that the ADA

claim against them is due to be dismissed because the plaintiff failed to exhaust his administrative remedies.[3]

The ADA makes it unlawful for an employer to discriminate against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). However, before an employee may bring suit against his employer, he must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC and receiving a right to sue letter. See 42 U.S.C. 12117(a); Maynard v. Pneumatic Prods. Corp., 256 F.3d 1259, 1262 (11th Cir. 2001); Booth v. City of Roswell, 754 F. App'x 834, 836 (11th Cir. 2018).

Whether the plaintiff intends to sue Dr. Gardner and the other individual defendants in their personal capacities or intends to sue the SCBE, his ADA claim

---

[3] Lurking in this case is the distinction between suits against defendants in their personal capacity and suits against them in their official capacity. It is not clear whether this *pro se* plaintiff is attempting to sue Dr. Gardner and the Board members individually or only in their official capacities as "Superintendent" and "Board Member." To the extent the plaintiff is suing them as individuals, none of them is a "covered entity" for purposes of ADA liability, and they are entitled to dismissal of the claim on that basis alone. The SCBE, as the employer, is the covered entity. See 42 U.S.C. § 1211(2) ("The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee."). However, if the plaintiff is suing them in their *official* capacities, he is effectively suing the SCBE. Suits against defendants in their official capacities are another way of suing the agency for which the official defendant works. See *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n. 55, 56 L. Ed. 2d 611 1978)). In either event, the failure of the plaintiff to exhaust his administrative remedies before the Equal Employment Opportunity Commission is dispositive.

is due to be dismissed as unexhausted because he has neither pleaded facts nor provided the court with any documentation or exhibits to suggest that he filed an EEOC charge within 180 days of his termination. Plaintiff was terminated on October 16, 2018. To have been timely filed, the plaintiff would have had to file an EEOC charge on or before April 14, 2019. Notwithstanding the fact the defendants' motions to dismiss put the plaintiff on notice of the requirement no later than February 19, 2019, a time at which he still could have filed a charge of discrimination, there is no allegation or indication that he has done so. Now, the time has expired. Plaintiff has not alleged that he filed an EEOC charge. Plaintiff has similarly not provided copies of his EEOC charge or Right to Sue letter from the EEOC. Accordingly, the plaintiff's claims under the ADA are due to be dismissed as unexhausted.

A. The Family and Medical Leave Act

Plaintiff asserts that his termination by the Sumter County Board of Education violated his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Plaintiff alleges that he had 61 sick days to use at the time of his termination and that he was not allowed to use those days. The

defendants have argued that the claims against them under the FMLA should be dismissed because Burks was not an "eligible employee" under the statute.

The FMLA is a remedial statute intended to eliminate gender-based discrimination by "creating an across-the-board, routine employment benefit for all eligible employees." Nevada Dept. of Human Resources v. Hibbs, 538 U.S. 721, 734-7, 123 S. Ct. 1972, 1555 L. Ed. 2d. 953 (2003). It permits eligible employees to take up to twelve weeks of leave to care for themselves, a spouse, a parent, or a child facing a serious health condition. Id. at 724; 29 U.S.C. § 2612(a)(1). Interference with or retaliation against an employee's efforts to use the benefit is actionable against the "employer." 29 U.S.C. § 2615(a)(1) and (2).[4] However, the statute limits the eligibility of employees. In order to be an "eligible employee" under the Act an employee must have worked for his or her employer for at least twelve months and have worked over 1,250 hours in the last year. 29 U.S.C. § 2611(2)(A). The right to leave under FMLA is provided only to eligible employees. Walker v. Elmore County Board of Educ., 379 F.3d 1249, 1253 (11th Cir. 2004) (citing 29 U.S.C. § 2612).

---

[4]  Once again, as noted above, the "employer" was the Sumter County Board of Education ("SCBE"), not the individual superintendent or the individual Board members in their personal capacities. As individual defendants, sued in their personal capacities, they are entitled to dismissal on this basis as well.

Whether the plaintiff intends to sue the defendants in their personal capacities or merely as official proxies for the SCBE, his claim must fail as a matter of law because he was not an eligible employee under the statute and, therefore, was not entitled to leave under the Act.  Plaintiff states that he was hired on July 10, 2018, by the Sumter County Board of Education.  He worked until August 27, 2018, when he took leave for treatment at the Tuscaloosa Veterans Administration Hospital.  He was then terminated on October 16, 2018.  Plaintiff had worked for the Sumter County Board of Education for 1 month and 17 days when he started his leave and for 3 months and 6 days at the time he was terminated.  The facts alleged by the plaintiff indicate that at no time during his employment was the plaintiff a qualified individual entitled to leave under the FMLA.  Accordingly, plaintiff's claims brought pursuant to the FMLA are due to be dismissed.


B. Employee Retirement Income and Security Act[5]

---

[5] The complaint is unclear whether the defendants are sued in their individual or official capacities. However, the Eleventh Circuit has stated that "the proper party in an action concerning ERISA benefits is the party that controls the administration of the plan. Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997).  Here there is no evidence that the board members or Superintendent Gardner controls the administration of the plan in their *individual* capacity, and the court cannot conceive of a set of facts under which this would be true.  The proper party would be the SCBE itself.

Burks alleges that his termination by the Board violated the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, because he was not able to use his 61 days of sick leave and he was promised at the time of his termination 75 days of pay and benefits[6] that he never received.  Dr. Gardner argues that the claims against him should be dismissed because he is not subject to liability because he was not the administrator of the ERISA plan.  He also joined the Board members in their arguments.  Collectively, the defendants argue that the claims against them in their official capacities are due to be dismissed because a suit against them in that capacity is no different than a suit against the state. Although not entirely clear, they essentially argue that the ERISA claim is barred by Eleventh Amendment immunity.

---

[6]  Severance pay can be a form of ERISA benefit.  See 29 U.S.C. § 1002(1)(B); Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 7, 107 S. Ct. 2211, 2215, 96 L. Ed. 2d 1 (1987) ("severance benefits are included in ERISA.").  If the employer has a "plan" setting criteria for employees to receive severance pay, it is an ERISA plan.  See Gilbert v. Burlington Indus., Inc., 765 F.2d 320, 325 (2d Cir. 1985), aff'd *sub nom*. Roberts v. Burlington Indus., Inc., 477 U.S. 901, 106 S. Ct. 3267, 91 L. Ed. 2d 558 (1986), and *aff'd*, 477 U.S. 901, 106 S. Ct. 3267, 91 L. Ed. 2d 558 (1986) ("severance pay is an unemployment benefit and an unfunded severance pay policy constitutes an 'employee welfare benefit plan' under § 1002(1)(A).").  Likewise, paid "sick days" are an ERISA benefit.  What is unclear, however, whether the SCBE had a "plan" setting criteria and eligibility for receiving these benefits.  ERISA regulates employee welfare-benefit "plans," not simply benefits.  See Emery v. Bay Capital Corp., 354 F. Supp. 2d 589, 592 (D. Md. 2005) (citing Fort Halifax, supra).  Because the *pro se* plaintiff's pleading is due to be liberally construed, however, the court will assume the plaintiff alleges the existence of such a plan or plans by inference from the offer to pay him severance in the absence of anything to the contrary from the defendants.

An assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the court and is treated as a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1).  See Black v. Wigington, 811 F.3d 1259, 1270 (11th Cir. 2016) ("Sovereign immunity is a question of jurisdiction. . . ."); see also Gordon v. Bentley, No. 7:15-cv-02282-LSC, 2016 WL 4379537, at *1 (N.D. Ala. Aug. 17, 2016) ("The issue of whether a defendant is entitled to Eleventh Amendment immunity is a threshold question of jurisdiction.").  Where the entity asserting the immunity is an "arm of the state" and there has been no waiver or express abrogation of the immunity, the Eleventh Amendment serves as a jurisdictional bar to suit.  See Gordon, 2016 WL 4379537, at *1-2.  Recent Eleventh Circuit authority, however, has rejected the argument that local school boards are an "arm of the state," entitled to claim Eleventh Amendment immunity. See Walker v. Jefferson County Board of Educ., 771 F.3d 748 (11th Cir. 2014)

In Walker, the court of appeals reviewed the consolidated appeals in two cases asserting federal statutory claims against local school boards.  The court held clearly that local boards of education are not "arms of the state" entitled to invoke Eleventh Amendment immunity.  It began the decision saying:

> In these consolidated appeals—Walker and Weaver—the Jefferson County Board of Education and the Madison City Board of Education ask us to recede from our opinion in Stewart v. Baldwin Cnty. Bd. of Educ., 908 F.2d 1499, 1511 (11th Cir. 1990), which held that school

boards in Alabama are not arms of the state and therefore not entitled
to Eleventh Amendment immunity. With the benefit of oral
argument, we conclude that the Eleventh Amendment ruling in
Stewart has not been overruled or abrogated, and therefore remains
binding precedent.

Walker v. Jefferson County Board of Educ., 771 F.3d 748, 750 (11th Cir. 2014).

Quoting also from the decision in Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir.

2003), the Walker court explained:

"Whether [an entity] is an 'arm of the [s]tate' must be assessed in
light of the particular function in which the [entity] was engaged when
taking the actions out of which liability is asserted to arise." Manders,
338 F.3d at 1308. Both of the cases before us concern employment-
related decisions (i.e., hiring, assignment, and compensation), and
under Stewart, 908 F.2d at 1509–11, local school boards in Alabama
are not arms of the state with respect to such decisions. Accordingly,
the Jefferson County Board of Education and the Madison City Board
of Education are not immune under the Eleventh Amendment from
suits challenging those decisions under federal law.

Walker v. Jefferson County Board of Educ., 771 F.3d 748, 757 (11th Cir. 2014).

In sum, school boards are not an "arm of the State" and are not entitled to Eleventh

Amendment immunity from federal law claims, at least with respect to

employment-related actions. The SCBE, as the plaintiff's employer, is not entitled

to Eleventh Amendment immunity from the plaintiff's ERISA claim.

As in their official capacities the defendant Board members do not seem to advance any other argument for dismissal of the ERISA claim against the SCBE itself,[7] their motion to dismiss the claim is due to be denied at this point.

## C. Due Process Rights

The plaintiff alleges that he was denied procedural and substantive due process under the law based on the precedent of Goss v. Lopez, 419 U.S. 565, 573, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975), when he was terminated by the Board. Dr. Gardner counters that the plaintiff's allegations are so deficient that he is unable to determine what claims are being made or how to defend himself. He also joins the Board members' argument that the claims fail to state a claim upon which relief can be granted, are barred by Eleventh Amendment immunity,[8] and are barred because the plaintiff failed to exhaust administrative remedies.

The Fourteenth Amendment protects citizens from deprivation of "life, liberty, or property" interests without due process of law. Maddox v. Stephens, 727 F.3d 1109, 1118 (11th Cir. 2013). When the deprivation occurs as a result of actions by a state official, the remedial vehicle is 42 U.S.C. § 1983. Id. The

---

[7] As the Board members themselves note, suing them in their official capacities is simply another way of naming the entity they represent, that is, the Sumter County Board of Education.

[8] The court has already determined that the SCBE and the defendants in their official capacities are not an "arm of the State" entitled to Eleventh Amendment immunity.

protections of the due process clause are two-fold and encompass both a substantive and procedural component.  Id.

An official may be liable in his or her individual capacity for a violation of a federal right where a plaintiff can "show that the official, acting under color of state law, caused the deprivation of a federal right."  Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 111 L. Ed. 2d 301 (1991).  However, here the allegations of the complaint are simply deficient, and the plaintiff fails to state a claim upon which relief can be granted.[9]  At the outset, because the plaintiff's allegations involve only alleged rights in employment, no fundamental rights are involved.  "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty,' Palko v. Connecticut, 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82 L. Ed. 288 (1937)."  McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994).  State-created rights, such as public employment, are simply not such a fundamental right.  "Hence, remaining largely outside the scope of substantive due process jurisprudence are tort law, [citation omitted], and *public employment law*,…."  Id. (citing Bishop v. Wood, 426 U.S. 341, 350, 96 S. Ct. 2074, 2080, 48 L. Ed. 2d 684

_____

[9] The court also believes that requiring Burks to amend his complaint, yet again, would be an exercise in futility. At the hearing prior to the filing of the plaintiff's first amended complaint, the court explained the pleading requirements of Rule 8 and how they applied to all of Burks's potential claims in painstaking detail, and as the defendants have pointed out, the court's explanation went largely unheeded.

(1976), and <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577–78, 92 S. Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972)) (Italics added).  Consequently, there can be no violation of "substantive due process."

The case relied on by the plaintiff, <u>Goss v. Lopez</u>, 419 U.S. 565, 573, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975), does declare that a "state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for discharge may demand the *procedural* protections of due process."  (Italics added).  But even this claim for procedural due process fails to state a claim because the plaintiff was accorded constitutionally adequate due process.

Assuming that the plaintiff had a legitimate claim of entitlement to his continued employment, at least during the one-year term of his appointment, he was provided with due process.  He was notified a month before he was terminated that Dr. Gardner would recommend his termination at the Board's October meeting, and he was given an opportunity to state in writing why he should not be terminated.  The requirements of procedural due process are not "elaborate."  The Eleventh Circuit has written that it requires only that "'[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the  employer's evidence, and an opportunity to present his side of the story.'"  <u>Galbreath v. Hale County, Alabama Comm'n</u>, 754 F. App'x 820, 826–

27 (11th Cir. 2018) (quoting <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 545, 105 S. Ct. 1487, 1495, 84 L. Ed. 2d 494 (1985)).  In this case, such procedure was mandated under the Students First Act, *Alabama Code § 16-24C-1, et seq.* The plaintiff admits that he received notice in advance that Dr. Gardner would recommend his termination.  He responded to that notice with at least two letters, saying:

> In reference to your letter dated Sept. 14, 2018, I ask that you and the board accept my resignation effective Nov. 16, 2018 when my 61 sick leave days are exhausted.  I am a Disabled Veteran, and I was treated for mental stress Spring 1981 at Charleston Air Force Base South Carolina.  The recalcitrant students refusing to follow rules of not talking as I taught, walk single-file and orderly in line, and pressure from Principal Maye to get them in order had me under such stress I nearly placed some in seats and in line.  As a result, I felt it best to seek treatment from Veteran's Administration Hospital, use sick days, and submit my resignation.  I have sent Principal Maye a lesson for each day through Nov. 16, 2018.  Due to the mitigating circumstances please[10]

and:

> This is a follow up to the statement dated today for members of the school board and you requesting you recommend acceptance of my resignation as English teacher at Livingston Junior High effective Nov. 16, 2018 due to mental stress rather than recommending termination.  I am a Disabled veteran with a "Service-connected" disability, and I am still in treatment at veteran's [sic] Administration Hospital with an appointment next on Oct. 26, 2018.

---

[10]   The exhibit submitted with the amended complaint was only this partial letter.

Thus, at the time the Board met and voted to terminate his employment, the plaintiff was on notice that his termination was proposed and he presented his side for why he should not be terminated. He received the process that was due him under the Fourteenth Amendment. His claim for denial of procedural due process under § 1983 is due to be dismissed.

D. Breach of Contract

Plaintiff has also alleged a breach of contract under Alabama state law, which is before the court on supplemental jurisdiction provided by 28 U.S.C. § 1367(a). However, insofar as the plaintiff seeks to sue Dr. Gardner and the individual Board members in their *personal* capacities, they are not a party to the employment contract between the plaintiff and the SCBE. Moreover, to the extent he seeks to sue them in their official capacities, they are entitled to the same sovereign immunity from State-law claims provided by Article I, section 14 of the Alabama Constitution as the Board itself can claim as an "arm of the State."[11] The Alabama Supreme Court reaffirmed its view that section 14 of the Alabama Constitution provides sovereign immunity protection for local boards of education, even with respect to claims for breach of contract. "Because county boards of

_____

[11] The court acknowledges the apparent contradiction with its earlier holding that the SCBE is not an "arm of the State" for Eleventh Amendment immunity. The difference, of course, is that while Alabama state law determines whether an entity is an "arm of the State" for purposes of claims made *under State law*, federal law determines whether such an entity is an "arm of the State" with respect to claims made under federal law.

education are local agencies of the State, they are clothed in constitutional immunity from suit…." <u>Ex parte Hale County Board of Educ.</u>, 14 So. 3d 844, 848 (Ala. 2009). Accordingly, the breach of contract claim is due to be dismissed as barred by sovereign immunity under Alabama state law.

## Conclusion

The motions to dismiss are due to be granted as to all of the plaintiff's claims except his claim under ERISA against Gardner and the individual board members in their official capacities. The plaintiff's claims under ERISA as asserted against the defendants in their individual capacities, the FMLA, and the Fourteenth Amendment Due Process clause, as well as his State-law claim for breach of contract, are due to be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). His ADA claim is due to be dismissed without prejudice because he has not exhausted his administrative remedies on the claim. Plaintiff's ERISA claim against Gardner and the board members in their official capacities remains pending.

**DONE** and **ORDERED** on April 29, 2019.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE